UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

MAGNOLIA LANE CONDOMINIUM                   Case No.: 19-24437-LMI
ASSOCIATION, INC.

     Debtor,                                    Chapter 11

_____ /

MAGNOLIA LANE CONDOMINIUM                   AP Case No.:
ASSOCIATION, INC

     PLAINTIFF

v.

SECURITY & FIRE SYSTEMS, INC.

-----------------------------------------------/

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11. U.S.C. 547 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 USC 502

**COMES NOW**, The Plaintiff **MAGNOLIA LANE CONDOMINIUM**

**ASSOCIATION, INC.,** as Debtor and Debtor-in-Possession (Plaintiff, Debtor or Association")

by and through its undersigned Counsel and files this Adversary Complaint to avoid and recover

preferential transfers against Defendant, Security & Fire Systems, Inc (Defendant). In support of

the Complaint, the Debtor hereby alleges upon information and belief that:

### INTRODUCTION

1. This action is commenced pursuant to sections 547 and 550 of chapter 11 of title 11 of the

United States Code ("Bankruptcy Code") to avoid and recover from Defendant, or from any other

person or entity for whose benefit the transfers were made, preferential transfers of property made

1

by Debtor that occurred during the ninety (90) day period prior to the commencement of the Debtor's bankruptcy proceedings.

2.  In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtor or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of his rights and the rights of the Debtor to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## A.  JURISDICTION AND VENUE

3.  This court has jurisdiction of this adversary proceeding, which arises under the Bankruptcy Code and relates to the above-captioned Chapter 11 Case pending in the United States Bankruptcy Court for the Southern District of Florida ("Court"), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4.  This adversary proceeding is a "core" proceeding to be heard and determined by this Court, pursuant to 28 U.S.C. § 157(b)(2).

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1409.

6.  The statutory and legal predicates for the relief sought herein are sections 502, 547 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

7.  Pursuant to Bankruptcy Rule 7008, the Plaintiff consents to entry of final orders or judgments by this Court.

## B.  RELEVANT PROCEDURAL HISTORY

8.  **Parties.** The Plaintiff /Debtor is a Non-For-Profit Florida Corporation who is responsible for managing the business affairs and common areas of a condominium Association located in West Kendall and known as Magnolia Lane Condominium Association.  The Association consists of 208 condominium units owned by individual owners.

2

9. The Chapter 11 Case Management Summary filed pursuant to Local Rule 20181-1(B) (DE # 27) provides additional information about the Debtor and the Debtor's business and the events leading to Bankruptcy and is fully incorporated by reference.

10. The Defendant is a Florida for Profit Corporation who provides Burglar alarm and fire alarm monitoring equipment and services for commercial and residential users.

11. Beginning on or about August 26, 2008, the Defendant and the Debtor entered into various contracts for alarm services.

12. **State Court Action.** On December 12, 2017, Defendant (Security & Fire) filed a Two (2) Count Complaint for Breach of a Fire Alarm contract entered into by the Defendant and the Debtor. *See Exhibit A.*

13. The Debtor did not defend the lawsuit and a Default was entered against the Debtor on April 24, 2018.

14. On June 11, 2018, Security and Fire (Defendant) filed a Motion for Final Judgment After Default. The Motion for Default provides sparse information as to damages and relies on a one page Sworn Statement of the President of the Defendant. *See Exhibit B.*

15. The Sworn statement contains no supporting documentation and provides conclusory statements of amounts dues with no basis for the alleged amounts due. See Exhibit B.

16. On July 10, 2018, the Court entered a "Final Judgment After Default" awarding the Plaintiff a total of $ 342,029.11 which includes award of unliquidated damages (hereinafter, "Judgment"). The Judgment was entered without a Trial as to the unliquidated damages. *See Exhibit C.*

## C. <u>FACTUAL BACKGROUND</u>

17. The Defendant (Security & Fire) made numerous attempts at collection of the Judgment. The Defendant made regular attempts to garnish the Debtor's pre-petition bank accounts.

18. On October 14, 2019, the Defendant sent a letter to the Plaintiff listing the current balance due on the Judgment. The letter reflects payments made by the Plaintiff as well as Defendant's Garnishments of the Plaintiff's Account. *See Exhibit D.*

19. On October 28, 2019 , (hereinafter, "Petition Date")  Debtor filed a Voluntary Petition for relief under the Bankruptcy Code.

20. During the ninety (90) day period prior to the Petition Date, or *July 29,  2019* through October 28, 2019  ("Preference Period"), the Defendant received $ 21,134.98  from the Debtor for The satisfaction of antecedent debts of the Plaintiff to the Debtor.

21. Specifically, the Defendant received the following funds from the Plaintiff:

- **09/17/2019**        **$ 10,209.53**
- **09/25/2019**        **$  8,838.85**
- **10/28/2019**        **$  2,086.60**
-    **TOTAL**          **$ 21,134.98.**

22. On November 29, 2019, the Debtor sent a Demand Letter to the Defendant and demanded the return of the Preference Payments Received by the Defendant.  A copy of the letter is attached as **Exhibit E.**

23. As of the date of the filing of this Complaint, the Defendant has refused to pay the Plaintiff for the preference payments received by the Defendant from the Plaintiff.

### D. <u>CLAIMS FOR RELIEF</u>

### <u>COUNT I</u>
**Avoidance of Preferential**
**Transfers – 11 U.S.C. § 547**

24. Plaintiff hereby incorporates all allegations stated in paragraph 1 through 23 as though fully set forth herein.

25. As more particularly described in paragraph 21 during the Preference Period, the Debtor made the Transfers to or for the benefit of Defendant in an aggregate amount of **$ 21,134.98.**

26. The Transfers constituted transfers of an interest in property of the Debtor.

27. During the Preference Period, Defendant was a creditor at the time of each Transfer by virtue of the State Court Judgment for which the Debtor was obligated to pay.

28. Each Transfer was to or for the benefit of a creditor within the meaning of Section 547(b)(1) of the Bankruptcy Code, because each Transfer reduced a  debt or debts then owed by the Debtor, as set forth in paragraph 16 AND 18.

29. Each Transfer or payments made by the Debtor to the Defendant  during the preference period was made for, or on account of, an antecedent debt or debts owed by the Debtor to Defendant before such Transfers were made.  The Defendant asserted a claim through the Judgment which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the Debtor, as set forth in paragraph 16 AND 18.

30. Each Transfer was made while the Debtor was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to Section 547(f) of the Bankruptcy Code.

31. Pursuant to Paragraph 21, each transfer from Debtor to Defedant set forth in paragraph 21 was made during the preference period.

32. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code.

33. In accordance with the foregoing, each Transfer is avoidable pursuant to Section 547(b) of the Bankruptcy Code.

34. Defendant was the initial transferee of the Transfer(s) and the person for whose benefit the Transfer(s) were made.

35. Based upon the foregoing, Plaintiff is entitled to an order and judgment against Defendant:

(i) avoiding the Transfers under section 547(b) of the Bankruptcy Code; and

(ii) entitling Plaintiff to recover the Transfers or the value of the Transfers from Defendant under Section 550(a) of the Bankruptcy Code,

(iii) together with the award of pre- and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and the costs of this action.

## COUNT II
### Recovery of Avoided Transfers
### 11 U.S.C. § 550

36. Plaintiff hereby incorporates all allegations stated in paragraph 1 through 23 as though fully set forth herein.

37. Plaintiff is entitled to avoid the Transfers pursuant to Sections 547 of the Bankruptcy Code ("Avoided Transfers").

38. Defendant was the initial transferee of the Avoided Transfers and the person for whose benefit the Avoided Transfers were made.

39. Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover the Avoided Transfers from Defendant, plus interest thereon to the date of payment and the costs of this action.

## COUNT III
### Disallowance of All Claims
### 11 U.S.C. § 502(d) and (j)

40. Plaintiff hereby incorporates all allegations stated in paragraph 1 through 23 as though fully set forth herein.

41. Defendant is an entity from which property is recoverable under Section 550 of the Bankruptcy Code.

42. Defendant is a transferee of the Avoided Transfers avoidable under Sections 547 of the Bankruptcy Code.

43. Defendant has not paid the amount of the Avoided Transfers, or turned over such property, for which Defendant is liable under Section 550 of the Bankruptcy Code.

44. Pursuant to Section 502(d) of the Bankruptcy Code, any and all claims of Defendant and/or its assignee against the Debtor's chapter 11 estate must be disallowed until such time as Defendant pays to Debtor an amount equal to the aggregate amount of the Avoided Transfers, plus interest thereon and costs.

45. Pursuant to Section 502(j) of the Bankruptcy Code, any and all claims of Defendant, and/or its assignee, against the Debtor's chapter 11 estate or Plaintiff previously allowed by the Debtor, must be reconsidered and disallowed until such time as Defendant pays to Debtor an amount equal to the aggregate amount of all the All Avoided Transfers.

## E.  **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff/Debtor prays that this Court grant relief and enter a judgment Against Defendant as follows:

a) That the Avoided Transfers avoidable under Sections 547 of the Bankruptcy Code, in the total aggregate amount of **$ 21,134.98.** be avoided;

b) That the Avoided Transfers, to the extent that they are avoided pursuant to Sections 547 of the Bankruptcy Code, be recovered by Plaintiff pursuant to Section 550 of the Bankruptcy Code;

c) That any and all claims held by Defendant and/or its assignee be disallowed in accordance with Section 502(d) of the Bankruptcy Code until Defendant satisfies the judgment;

d) That any and all claims held by Defendant and/or its assignee be disallowed in accordance with Section 502(j) of the Bankruptcy Code until Defendant satisfies the judgment;

e) That pre-judgment interest be awarded at the maximum legal rate running from the date of filing of the Complaint to the date of judgment herein;

f) That post-judgment interest be awarded at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

g) That Defendant be required to pay forthwith the judgment amount awarded in favor of Plaintiff; and

h) That the Plaintiff be granted such other and further relief as the Court deems just and proper.


RESPECTFULLY SUBMITTED:    December 26, 2019

**I CERTIFY** that a true copy of this ADVERSAY COMPLAINT was filed with the court and served on all parties of Record and the US Trustee  by CMECF December 26, 2019.

**JOHN PAUL ARCIA, P.A.**

Counsel for Debtor
175 SW 7th Street, Suite 2000
Miami, FL 33130
Phone: (786) 429-0410
Fax: (786) 429-0411
Email: parcia@arcialaw.com
By: /s/ John Paul Arcia, Esq.
Fla. Bar No. 73723


Copies to:
**19-24437-LMI Notice will be electronically mailed to:**
**Office of the US Trustee** ariel.rodriguez@usdoj.gov
**Michael A. Frank, Esq.,** *Counsel for Security & Fire Systems* mfrank@bkclawmiami.com
**Frank Perez-Siam, Esq.,** *Counsel for Security Premium Finance, Inc.* fpsiam1@aol.com
**Matthew Estevez, Esq.,** *Registered Agent for Balerdi Group Corporation* mse@mattestevez.com
**Eddy Leal, Esq.,** *Counsel for Balerdi Group Corporation* el@leallegal.com
**Morgan B. Edelboim, Esq.,** *Counsel for Association Financial Services, LLC* morgan@elrolaw.com
**Derek Varona,** *Former Receiver for Magnolia Lane Condominium Association, Inc.*
dvarona@seagrove.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

MAGNOLIA LANE CONDOMINIUM                Case No.: 19-24437-LMI
ASSOCIATION, INC.

     Debtor,                                  Chapter 11
_____/

MAGNOLIA LANE CONDOMINIUM                AP Case No.:
ASSOCIATION, INC

     PLAINTIFF

v.

SECURITY & FIRE SYSTEMS, INC.

---------------------------------------------------/

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11. U.S.C. 547 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 USC 502

# EXHIBIT-A

Filing # 65286392 E-Filed 12/12/2017 02:32:47 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO.

SECURITY & FIRE SYSTEMS, INC.,

        Plaintiff,

vs.

MAGNOLIA LANE CONDOMINIUM
ASSOCIATION, INC., a Florida
corporation,

        Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, **SECURITY & FIRE SYSTEMS, INC.,** by and through undersigned

counsel, hereby sues the Defendant, **MAGNOLIA LANE CONDOMINIUM**

**ASSOCIATION, INC.,** and states:

1.    This is an action for damages which exceed fifteen thousand dollars ($15,000.00),

exclusive of interest and costs, and which is otherwise within the jurisdiction of

this court.

2.    Venue is proper in Miami-Dade County, Florida, because the Defendant is located

in said County, and because the contracts upon which the Plaintiff's action is

based were executed and performed in Miami-Dade County, Florida.

3.    At all times material hereto, the Plaintiff, Security & Fire Systems,

Inc.(hereinafter referred to as "Security," or "Plaintiff"), maintained its principal

place of business in Miami-Dade County, Florida, and engaged in the business of

installing, modifying, maintaining, repairing, inspecting, and monitoring burglar and fire alarm systems.

4.    At all times material hereto, the Defendant, Magnolia Lane Condominium Association, Inc. (hereinafter referred to as "Magnolia," or "Defendant"), was a Florida corporation, with its principal place of business located in Miami-Dade County, Florida.

5.    At all times material hereto, the Defendant was the owner/operator of numerous buildings in Miami-Dade County, Florida.

6.    All actions precedent to the commencement of this action have occurred, or have been performed, excused, satisfied, or waived.

## FACTS COMMON TO ALL COUNTS

The Plaintiff realleges and reavers the allegations contained in Paragraphs 1-6 above, as if set forth fully herein.

7.    The Plaintiff and the Defendant have enjoyed a business relationship for a period beginning on or before August of 2008 until the present.

8.    On August 26th, 2008, the parties entered into a contract whereby Security was to provide fire alarm services for a period of three (3) years to Magnolia at its buildings located at 7403, 7407, 7408, 7411, 7415, 7417, 7419, 7423, 7425, 7427, and 7429 S.W. 152nd Street, in Miami, Florida.

9.    The services to be provided included an Annual Fire Alarm Inspection, and Annual Single Station Smoke Detector Certification for the smoke detectors at each building.

2

10. The contract provided that service charges for repairs, etc. to the alarm systems would be billed pursuant to invoices provided by Security to Magnolia, and charged separately from the inspection and certification fees.

11. In addition, the contract contemplated additional payments amounting to $48,804.45, to be applied to a prior balance owed by Magnolia to Security.

12. Finally, the contract provided that the ownership of any equipment installed by Security would remain the property of Security.

13. On February 1st, 2011, the parties entered into a second contract, covering UL Fire Alarm Monitoring Service and Runner Service on Call for the buildings containing UL equipment, to wit: Buildings 7401, 7405, and 7421 S.W. 152nd Street.

14. The February 1st, 2011 contract was for a period of five (5) years.

15. Four years after the execution of the two contracts referenced above, the parties entered into two contracts which superceded the prior two.

## COUNT I- BREACH OF CONTRACT

The Plaintiff realleges and reavers the allegations contained in Paragraphs 1-15 above, as if set forth fully herein.

16. On or about April 13th, 2015, the Plaintiff and the Defendant entered into a third contract, a copy of which is attached hereto as Exhibit "A" and made a part hereof for all purposes. The contract was executed on April 14th, 2015.

17. The contract provided for the Plaintiff to monitor the fire alarm systems, provide Runner Service on Call, and Annual Single Station Smoke Detectors, and to

3

provide related services for the Defendant at the fourteen (14) buildings owned by it, as set forth above.

18.     The contract provided for services to the Defendant's building for a period of five (5) years, with an additional three (3) year period of service unless notice was provided as stipulated in Paragraph 18 of the contract that the Defendant intended not to renew.

19.     In return, the Defendant promised to pay $495.00 quarterly (in advance) for the Fire Alarm Monitoring, and $600.00 quarterly (in advance) for the Runner on Call Service. The Defendant further promised to pay $85.00 per hour per technician, per building, for service to Single Station Smoke Detectors.

20.     Schedule E, an addendum to the contract, provided that Security would conduct all necessary Fire Inspections and Certifications, and provide other services as specified in the Schedule, during the contract period, at the additional rates set forth in the Schedule.

21.     Paragraph 17 of the contract provided that, should payments not be made when due, the Plaintiff could, at its sole discretion, accelerate all monies due for the three year contract period.

22.     Paragraph 15 of the contract provided that, should collection actions be necessary, all costs of collection, including attorney's fees shall be paid by the Defendant.

23.     During the term of the contract, although all services were being provided as required by the contract, the Defendant failed to make payments when due, and ultimately ceased paying for the services received.

4

24. The contract again provided that all equipment installed by Security at the Defendant's properties, was to remain the property of Security, and that the ownership of said equipment would not pass to Magnolia.

25. During the contract period, although Security provided all services required by the contract, Magnolia ceased making payments on the account.

26. Although Security demanded payment of the monies due and owing to it pursuant to the terms of the contract, Magnolia failed and refused to make payments as specified in the contract.

27. On August 22nd, 2017, Security notified Magnolia that it was in breach of the contract between the parties, and accelerated the monies owed accordingly.

28. As a direct and proximate result of the Defendant's actions and omissions, the Plaintiff suffered damages within the jurisdictional limits of this Court.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant for damages in excess of $15,000.00, plus late fees, interest, attorney's fees, and the costs of this action.

## COUNT II- BREACH OF CONTRACT

The Plaintiff realleges and reavers the allegations contained in Paragraphs 1-15 above, as if set forth fully herein.

29. On or about April 14, 2015, the Plaintiff and the Defendant entered into a fourth contract, a copy of which is attached hereto as Exhibit "B" and made a part hereof for all purposes.

30. The contract provided that Security would install UL fire alarm equipment at the Defendant's properties, for an installation charge of $18,000.00, plus tax.

5

31. The installation charge was to be paid at a rate of $802.50 per month for twenty-four (24) months.

32. In addition, the contract called for Security to monitor the system for a period of three (3) years, and Magnolia to pay for the monitoring in advance, quarterly.

33. In addition, Security was to provide inspections and certifications of the system, an annual emergency/exit inspection, and an annual smoke detector certification.

34. Finally, the contract stated that Security would provide runner services during both business and off hours.

35. The ownership of the installed equipment was to transfer to the Defendant upon the completion of the payment plans.

36. Although Security provided all of the required services during the contract period Magnolia has failed and refused to pay in full for services rendered.

37. Although Security demanded payment of the monies due and owing to it pursuant to the terms of the contract, Magnolia failed and refused to make payments as specified in the contract.

38. On August 22nd, 2017, Security notified Magnolia that it was in breach of the contract between the parties, and accelerated the monies owed accordingly.

39. As a direct and proximate result of the Defendant's actions and omissions, the Plaintiff suffered damages within the jurisdictional limits of this Court.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant for damages in excess of $15,000.00, plus late fees, interest, attorney's fees, and the costs of this action.

6

Respectfully Submitted,

Steven Mark Greenberg, P.A.
7510 N.W. 79th Avenue, Suite Q3
Tamarac, Florida 33321
Telephone: (954) 830-1002
Facsimile:   (954) 430-9289
E-Mail:      smgpasg@gmail.com

  /s/ Steven M. Greenberg
Florida Bar Number 115046

7

**SECURITY & FIRE SYSTEMS, INC.**

13016 S.W. 128th Street p Miami, Florida 33186 p Tel.: (305) 971-2944 p Fax: (305) 255-8860
E-MAIL: INFO@BURGFIRE.COM
WWW.BURGFIRE.COM

**FIRE AGREEMENT**                    Agreement N°: SF080401

This agreement, made this _13_ day of APRIL 2015_by and between SECURITY & FIRE SYSTEMS, INC., Inc. (hereinafter referred to as "CompanSFSy"), and
Name _MAGNOLIA LANE CONDOMINIUM_____ S.S
Address 7401-7403-7405-7407-7409-7411-7413-7417-7419-7421-7423-7425-7427-7429 SW 152 AVE___
City/State/Zip _MIAMI FL 33193_____
Phone _____                    (hereinafter referred to as "Client")

**1. SERVICES:**
1.1. Equipment: Company agree to provide, as part of the security services, the equipment detailed in Schedule A attached hereto and made a part of this Agreement.
  1.1.1 Equipment to be installed at the following location: _____above address____
  1.1.2 Equipment installation charge _($_ (Plus all applicable taxes
  1.1.3 ■Equipment Ownership remains with Company (attach Schedule B).
  1.1.4 □ Equipment Ownership transfers to Client (attach Schedule D).

1.2 Monthly Services: Client agrees to pay Company for security services itemized below:

| Type of Service | Service Charge | Type of Service | Tax Service Charge |
|---|---|---|---|
| ■ Quarterly Fire Alarm Monitoring Service ($55.00 for only UL bldg. per month) | $ 495.00 | ■Tax | $ 34.65 |
| ■ Quarterly Runner Service on call ($200.00 for all non UL Bldgs) | $ 600.00 | ■Tax | $ 42.00 |
| ■ Annual Single Station Smoke Det (Total of 14 buildings-per bldg) ($85.00 per br.per man.per bldg) | $ | □Tax | $ |

¶The Service of $____ will be billed accordingly__ is payable in advance □Monthly, □Quarterly, ■Semi-Annually, or □Annually to
SECURITY & FIRE SYSTEMS, INC., AND/OR ITS ASSIGNS Address 13016 S.W. 128th Street > Miami, Florida on the first day of the month following the estimated date of commencement of service which is _____, 20___

**2. TERM OF THIS AGREEMENT:**
2.1 The primary term of this Agreement shall be for a period of _____ _5_ (years)_____years from the date of first billing. Note Auto Renewal clause on reverse side Section 18. This Agreement is non-cancelable.
**3. SERVICE:**
3.1 Calls for Service or Sales assistance should be directed to SECURITY & FIRE SYSTEMS, INC.
  Address____MIAMI-DADE, FL___ Phone N° (305) 971-2944
**4. ADDITIONAL TERMS:**
4.1 This Agreement consists of the terms contained on this page, the reverse side of this document and on any attachments indicated as follows:
  □Schedule A,        □Schedule C,        ■Schedule E,        □ Schedule G,        □ Other  _UCC-1 Filing of UCC-1 Fin. Statement_
  □Schedule B,        □Schedule D,        ■ Schedule F,        □ Schedule H,        □ Other  _____

**5. CLIENT SELECTED SERVICES:**
5.1 Client acknowledges that where burglar and/or fire alarm or access control equipment is provided, the system is designed to detect entry only through those accesses and/or areas actually covered by the equipment listed on Schedule A of this Agreement, that such equipment performs only those functions, and the system is activated only under the circumstances explained to the Client. Further, Client acknowledges that (a) Company has explained the full range of protection, equipment and services available to Client; (b) Client desires and has contracted for only the equipment and services itemized on this Agreement; and (c) additional protection over and above that provided herein is available and may be obtained from Company at an additional cost to the Client.
5.2 CLIENT UNDERSTANDS AND AGREES THAT IF COMPANY SHOULD BE FOUND LIABLE FOR LOSS OR DAMAGE BECAUSE OF THE FAILURE OF THE SYSTEM TO PERFORM PROPERLY OR THE FAILURE OF COMPANY TO PERFORM ANY OF ITS OBLIGATIONS OR TO PROVIDE ANY OF THE SERVICES DESCRIBED FORTH ON ALL SCHEDULES ATTACHED HERETO, INCLUDING, BUT NOT LIMITED TO INSTALLATION, SERVICE, MONITORING, OR THE FAILURE OF ANY EQUIPMENT INSTALLED BY, OR SERVICE PERFORMED BY COMPANY IN ANY RESPECT WHATSOEVER, COMPANY'S LIABILITY SHALL NOT EXCEED A SUM EQUAL TO THE ANNUAL SERVICE CHARGE PAYMENT CONTRACTED FOR HEREIN OR TWO HUNDRED AND FIFTY DOLLARS ($250.00), WHICHEVER IS THE LESSER AND THIS LIABILITY SHALL BE EXCLUSIVE; AND THAT THE PROVISIONS OF THIS SECTION SHALL APPLY IF LOSS OR DAMAGE, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY, TO PERSON OR PROPERTY, FROM PERFORMANCE OR NON-PERFORMANCE OF THE OBLIGATIONS IMPOSED BY THIS AGREEMENT, OR FROM NEGLIGENCE, ACTIVE OR OTHER OTHERWISE, OF COMPANY, ITS AGENTS, AGENS OR EMPLOYEES.
5.3 CLIENT FURTHER ACKNOWLEDGES THAT CLIENT HAS READ AND UNDERSTANDS ALL OF THIS AGREEMENT INCLUDING THE TERMS AND CONDITIONS ON THIS SIDE AND THE REVERSE SIDE OF THIS DOCUMENT, PARTICULARLY PARAGRAPH 5 REGARDING COMPANY'S LIMITATIONS OF LIABILITY AND AGREES TO THE AMOUNTS SET FORTH THEREIN AS WELL AS THOSE TERMS AND CONDITIONS ON ANY SCHEDULE ATTACHED HERETO AND ACKNOWLEDGES RECEIPT OF A TRUE COPY OF ALL APPLICABLE SCHEDULES.
IN WITNESS WHEREOF, and intending to be bound hereby, the parties hereto have executed this Agreement this _14_ day of _April_, 20_15_

COMPANY SECURITY & FIRE SYSTEMS, INC.                    CLIENT:
                              And/or its assigns
_____                    By: _____ _President_
Security Consultant                               (NOTE: SECTION 2.1 MUST BE COMPLETED)
_____                    By: x ___MBP___ _Secretary_
Manager                                        (NOTE: SECTION 2.1 MUST BE COMPLETED)

I hereby authorize Security & Fire Systems Inc. to fix my signature to work orders and this agreement necessary for work being performed on my behalf by Security & Fire Systems Inc.electronically. Said electronic signature shall constitute my authorization for Security & Fire System Inc to do the work ordered and will obligate me to pay for said work when invoiced.
This Agreement shall be binding upon Company unless approved in writing by an authorized Manager for Company. In the event of non-approval, the sole Liability of Company shall be refund to Client the amount that has been paid to Company by Client upon execution of this Agreement.
NOTE: This Agreement is not valid unless signed by both parties                    By: _____ _Treasurer_
                                        CONTRACTOR'S LICENSE # EC-13005550
ALARM LICENSE #_____        1 OF 3        _Water Mark on Contract to proof this is an original copy_

Plaintiff's Exhibit A

MARGNOLIA LANE CONDOMINIUM

1. **Increase in Service Charges**
   1.1 Company shall have the right annually too increase the Service Charges provided for herein by the same percentage as the 12 month increase in the "Consumer Price Index" (all cities, all items) as published by the U.S. Department of Labor by giving Client thirty (30) days written notice in advance of the effective date of such increase Company shall have the right to increase the Service Charges by an amount greater than the CPI provided that Client approves such an increase. Written notice of an increase greater than the CPI shall be given sixty (60) days in advance of the effective date of such increase, and Client failures to deny the increase within thirty (30) days of notification shall constitute Clients agreement to such increase
   1.2 Charges for time and materials maintenance services are based upon Company service rates in effect at the time of the service and are subject to change without notice.

2. **Increase in Taxes or Other Fees**
   2.1 Client acknowledges that all charges for services set forth herein are based upon existing federal, state and local taxes and utility charges, including telephone company line charges, if any. Company shall have the right, at any time, to increase the monthly charges provided herein to reflect any additional taxes, fees or charges which hereafter may be imposed on Company by any utility or governmental agency relating to the service(s) provided under the terms of this Agreement and Client agrees to pay the same.

3. **Clients Duties As to Use of System**
   3.1 The Client shall carefully and properly test and set the system immediately prior to the securing of the premises and carefully test the System in a manner prescribed by Company during the term of this Agreement. If any defect in operation of the System is detected, malfunction, interruption of telephone service, or other interruption at Clients premises. Client shall notify Company immediately. If space/interior protection (i.e., ultrasonic, microwave, infrared, etc.) is a part of the System, Client shall walk test the System in the manner recommended by Company.
   3.1 When any device or protection is used, including, but not limited to, space protection, which may be affected by turbulence of air, occupied airspace change or other disturbing conditions, Client shall turn off or remove all things, animate or inanimate, including but not limited to forced air heaters, air conditioners, fans, bells, animals and any other sources of air turbulence or movement which may interfere with the effectiveness of the System during closed periods while the alarm system is on. Client shall notify Company of any remodeling or other changes to the protected premises that may affect the operation of the System.
   3.2 Client shall cooperate with Company in the installation, operation and maintenance of the System and shall follow all instructions and procedures Company may prescribe for the operation of the System, the rendering of services and the provision of security for the premises.

4. **Authorized Personnel**
   4.1 Client agrees to furnish forthwith a list of the names, addresses and telephone numbers of all persons authorized to enter or remain on Client's premises and/or that should be notified in the event of an alarm. Client shall also furnish a written opening, closing and holiday schedule, if applicable to the services provided herein. Client agrees to provide all changes, revisions and modifications to the above Company in writing in a timely manner.

5. **Third Party Indemnification**
   5.1 When the Client in the ordinary course of business has custody of the property of others, or the alarm system extends to protect property of others Client agrees to and shall indemnify, demand and hold harmless Company, its employees and agents for and against all claims brought by parties other than the parties to this Agreement. This provision shall apply to all claims regardless cause including Company's performance or failure to perform and including defects in products, design, installation, maintenance, operation or non-operation of the System whether based upon negligence, active or passive, warranty or strict or product liability on the part of Company, its employees or agents, but this provision shall not apply to claims for loss or damage solely and directly caused by an employee of Company while on Clients premises.

6. **Client's Purchase Order**
   6.1 It is understood and agreed by and between the parties hereto that if there is any conflict between this Agreement and Client's Purchase Order this Agreement shall govern, whether such Purchase Order is prior or subsequent to this Agreement. SFS has the right of first refusal on new and repair systems.

7. **Assignment by Client**
   7.1 Client acknowledges that the sale or transfer of Client's premises shall not relieve Client of duties and obligations under this Agreement unless Company agrees to the transfer of this Agreement.

8. **Assignee and / or Subcontractors of Company**
   8.1 Company shall have the right to assign this Agreement in whole or in part to any other person, firm or corporation and shall have the further right to subcontract any surveillance, monitoring, maintenance, patrol, emergency response, or other services it may perform. In either event Clients agrees and particularly those paragraphs relating to Company's maximum liability, and third party indemnification, shall inure to the benefit of and are applicable to any assignees and/or subcontractors of Company, and that they bind Client with respect to said assignees and/or subcontractors with the same force and effect as they bind Client to Company.

9. **Additional Services**
   9.1 Client agrees that Client may subscribe for or purchase additional services equipment or security protection from Company at agreed prices by written purchase order or contract and that any such additional services, equipment or protections shall, except for the price to be governed exclusively by this Agreement
   9.2 The Client agrees that unless authorized by Company, any alterations, removal or tampering with the equipment or the attaching of any device, contrivance or apparatus to the equipment or any part thereof shall operate to void any warranties provided herein.
   9.3 If any agency or bureau having jurisdiction, or Client by his or its own act shall require or make necessary any changes in the equipment originally installed Client agrees, on demand, to pay for the reasonable cost of such changes.

10. **Default; Termination**
    10.1 In the event (I) Client fails to pay any amount due for the System, (II) Client fails to comply with any of the terms and conditions hereof, (III) Client makes an assignment for the benefit of creditors, (IV) an order for relief is entered against Client under any chapter of the National Bankruptcy Code as amended, (V) a receiver or trustee is appointed for all or substantially all of the assets of Client, Company may pursue any one or more of the following remedies, which are cumulative and non-exclusive
    a) Terminate all services subscribed for hereunder by giving five (5) days written notice to Client and recover all amounts then due to Company.
    b) Take possession of all Company owned equipment.
    c) Recover from Client all amounts due hereunder.
    d) Pursue any other remedy at law now or hereafter existing.

11. **Delays or Interruption**
    11.1 Company assumes no liability for delay in the installation of the System for interruption of Services, or damage done to any equipment due to strikes, riots, floods, storms, earthquakes, fire, power failures, insurrection, interruption or unavailability of telephone or cable service, act of God, or for any other cause beyond the control of Company, and will not be required to provide installation for services, or repairs, Client while interruption of services due to any such cause may continue.
    11.2 Company assumes no liability for delay of installation or service due to non-cooperation of the Client or his agents in providing access to that area of the premises where the equipment is to be located or for delays or interruptions of installation or service on any device or devices of this Client or of others to which Company's equipment is attached. If Client is unable to have premises available for installation of equipment within ninety (90) days of date Company is ready to begin installation, Client shall pay any additional labor or equipment costs incurred by Company due to price increase occurring after the ninety (90) days period has expired. Such additional costs shall be limited to actual increases in prices and shall be payable upon demand.

12. **Insurance**
    12.1 Company acknowledges that it carries Workers Compensation and public liability insurance applicable to the work performed under this Agreement.

13. **Telephone Service**
    13.1 Client agrees to furnish any necessary telephone service or telephone lines at Client's own expense. Any and all telephone company charges shall be billed to Clients telephone bill, unless specified otherwise in Paragraph 2 on the front side of this Agreement

14. **Electrical Current**
    14.1 The Client agrees to furnish any necessary electrical service and current through the Client's meter and at the Client's sole expense.
    14.2 Title Clause, Paragraph titles used in this Agreement are for reference only and are not to be construed as governing the construction of the specific provisions in this Agreement

15. **Payment; Delinquencies**
    Payment shall be due upon the receipt of invoices by Client unless otherwise specified on the front hereof. Interest shall accrue on all accounts more than thirty (30) days past due at the maximum allowable rate. All payments shall be due and payable at Company's office set forth on the front hereof. If an attorney is employed to collect any amount due Company, Client agrees to pay Company reasonable attorneys fees and costs incurred when permitted by applicable law. If Services are discontinued because of Client's past due balance, and if Client desires to have the connection Services reactivated, Client agrees to pay in advance to Company a reconnect charge to be fixed by Company at a reasonable amount.

16. **Entire Agreement, Modification, Waiver**
    16.1 This writing is intended by the parties as a final expression of their agreement and as a complete and exclusive statement of the terms thereof. This Agreement supersedes all prior representations, understandings or agreements of the parties, written or oral, and shall constitute the sole terms and conditions of use for all equipment and services. This Agreement can be modified only in writing, signed by the parties or their duly authorized agent. No waiver or a breach of any term or condition of this Agreement shall be construed to be a waiver of any succeeding breach.

17. **Acceleration Clause**
    17.1 The failure to pay the amounts under paragraphs 1 1.2, 1 1.3,1.1,4,1.2,1 3, and 5 shall result in a default under this contract and all present and future payments due under said paragraphs shall immediately become due and payable. Client shall pay interest at the maximum rate allowed by law from date of default until paid.

18. **Renewal Clause** Unless otherwise provided under the terms of the attached schedule, this Agreement shall automatically renew for a period of 3 years at the end of such primary term or any renewal term thereafter unless Client shall have given written notice to Company sixty (60) days before the end of the primary renewal term. Notice must be sent via certified return receipt mail

19. **Late Fee** If payment is not received by the 10th of the month the Company reserves the right to charge a late fee, which will be 15 per month , 18% a year

2 OF 3

INITIALS *E.V*

## SCHEDULE E MAGNOLIA LANE CONDOMINIUM
### FIRE SERVICES AGREEMENT WITH COMPANY
### INSPECTIONS AND CERTIFICATIONS

| 1.1  AS PART OF FIRE SERVICE AGREEMENT 2.2.1 | Per-Call | Monthly | Quarterly | Semi-Annually | Annually |
|---|---|---|---|---|---|
| A) Annual Fire Alarm Inspection / Certification – (-7401-7403-7405-7407-7409-7411-7415-7417-7419-7421-7423-7425-7427-7429 SW 152 AVE) | | | | | $300.00 per bldg |
| B) Annual UL Fire Alarm Inspection / Certification – (7401-7405-7421 SW 152 AVE) | | | | | $350.00 per bldg |
| C) Annual UL Fire Certificate (7401-7405-7421 SW 152 AVE) | | | | | $200.00 per bldg |
| D) Annual Emergency/ Exit Inspection (Tagging on Emergency/Exit Light Systems & Cert. Tag (7401-7403-7405-7407-7409-7411-7415-7417-7419-7421-7423-7425-7427-7429 SW 152 AVE) | | | | | $42.60 per bldg |
| E) Annual Smoke Station Smoke Detectors Certification (Tagging on Fire Alarm Systems & Cert. Tag) (7401-7403-7405-7407-7409-7411-7415-7417-7419-7421-7423-7425-7427-7429 SW 152 AVE) | | | | | $250.00 per bldg |
| The Service Charges of $___9046.40 (tax not included) | | is payable $___9046.40 (tax not included) | | | Annually |

| 1.4  RUNNER SERVICE | | | | | |
|---|---|---|---|---|---|
| A) Runner Service Normal Business Hours (Normal Business Hrs. are 7 a.m.—6 p.m. M-F) | $ 170.00 | $ | $ | $ | $  (Per – Call COVERS FIRST 2 HRS MIN SERVICE CALL CHARGE ) |
| B) Runner Service Non-Normal Business Hours (Non-Normal Business Hrs. are 6 p.m. – 7 a.m. M-F & Sat. – Sun) | $ 225.00 | $ | $ | $ | $  (Per – Call COVERS FIRST 2 HRS MIN SERVICE CALL CHARGE ) |

**1.5   AGREEMENT**

1.51 The subscriber has contracted with the Service Company for the Fire Alarm System and / or service at premises indicated on Service Agreement, (hereinafter called the Premises)

1.52 The subscriber has contracted with the Service Company to enter into agreement with Central Station Service as per NFPA72 and local Fire Department to comply with Runner Service and Central Station Service and the subscriber agrees to pay fees for such as per price Listed on Schedule E

1 53 The Subscriber agrees with Company maintenance, testing and inspection is included as per NFPA72;that system will be maintained and fully functional at all times and deficiencies repaired within 4 hour as per Co. Code Sect. 14-66 (a) and 14-66(5);if specific part is needed to be able to repair deficiencies and specific part needs to be ordered, Company will advise AHJ by means of letter.

1.54 The Subscriber agrees with Company that runner shall be provided with keys or other means to access alarm as per Co. Code Scot 14-66(4)(a), in order to have 2 hour response after notification of alarm signal or supervisory signal and 4 hour response after notification of trouble signal. If monitoring is required Customer agrees that runner will be dispatched without prior approval by Customer.

**2. INSPECTIONS CERTIFICATIONS SERVICE**

2.1 The Company and the Subscriber have entered into a Service Agreement wherein and whereby the Company will provide additional     Services for the Subscriber, such services to consist of those set and shall become part of 2.2.21 Terms of this Agreement. This agreement is non-cancelable.

    Basic Fire Alarm Services include:
       a) Direct call response by experienced operators, to an emergency condition until proper authorities are notified. 1.2 Fire Services.

       b) Direct call response until a station designated by subscriber is notified.
       c) Direct dispatch of Service Technician billed on hourly base in accordance to existing price list on schedule.
       d) Subscriber agrees to pay Company for Fire Alarm Services itemized as part of 2.2.21 Terms of this Agreement and shall be govern by Fire Service Agreement.

2.2   The Subscriber and the Company agree that the Company's sole and only obligation under Schedule shall be to service and inspection reports. Report any deficiencies to Property Management or authority having jurisdiction AHJ as stated in NFPA 72 and 101.

       a) Any deficiencies for repairs or modifications of system which customer rejects does not constitute waiver of this agreement. The sole liability of company under Schedule C is to report malfunction, non-operational Life Safety Protective Devices.

       b) The company sole responsibility shall be to summit deficiencies. Any labor for repairs and parts are to be billed on a separate itemized bill, on an hourly basis. And at a current list price for parts as per price list on schedule.

       c) The Subscriber shall immediately report to Company any claimed inadequacy in or failure of the Fire Alarm system.

2.3   This Inspection, Certification shall continue for as long as the Company contracts with the Subscriber as per 2.2.1. As per Security Service Agreement

2.4   This Service Agreement may also be suspended at the Company's option, should the Fire Alarm System Equipment or the premises become so substantially damaged that further service is impracticible or refusal to comply with NFPA 101-72 UL.
       a) The Company assumes no liability for delay in installation of the system, or interruption of service due to strike, riots, floods, fires, acts of God, war, or any causes beyond the control of the Company, including interruption in telephone service. The Company will not be required to supply service to the Subscriber while interruption of service due to any such cause shall continue.

**3. LIABILITY**

The Company shall not be liable for any loss or damage caused by defects or deficiencies in the Fire Alarm System Equipment nor shall the Company incur any liability for any delay in response time or non-response of the Fire Department or other authorities, institutions or individuals notified by the Company.

3 1   It is understood and agreed by Subscriber that the Company is not an insurer and that Insurance, if any, covering personal injury and property loss or damage on Subscriber's premises shall be obtained by the Subscriber; that the Company is being paid to monitor the Fire Alarm System designed to reduce certain risks of loss and that the amount being charged by the Company are not sufficient to guarantee that no loss will occur.

3.2   This Inspection, Certification, Service may only be altered or modified by an agreement in writing signed by both parties.

Water Mark on Contract is proof this is an original copy.

NAME _Gloria Urrea_ INITIALS _G.U_     DATE _4-14-2015_
3 OF 3



# SECURITY & FIRE SYSTEMS, INC.



13016 S.W. 128ʰ Street ρ Miami, Florida 33186 ρ Tel.. (305) 971-2944 ρ Fax: (305) 255-8860
E-MAIL: INFO@BURGFIRE.COM
WWW.BURGFIRE.COM

### FIRE AGREEMENT                    Agreement Nº: SF060401

This agreement, made this __14__ day of APRIL 2015__ by and between SECURITY & FIRE SYSTEMS, INC., Inc. (hereinafter referred to as "CompanSFSy"), and
Name __MAGNOLIA LANE CONDOMINIUM_____ S S _____
Address __7427 SW 152 AVENUE_____ S S _____
City/State/Zip) __MIAMI FL 33193_____
Phone _____ (hereinafter referred to as "Client")

**1. SERVICES:**
1.1. Equipment Company agree to provide, as part of the security services, the equipment detailed in Schedule A attached hereto and made a part of this Agreement
1.1.1 Equipment to be installed at the following location: ___above address____
1.1.2■Equipment installation charge _UL FIRE ALARM SYSTEM INSTALL. ($18,000.00_ (Plus all applicable taxes
1.1.3■Payment Plan 24 equal monthly payments of $802.50 over 24 month term period at not interest rate
1.1.4■Equipment Ownership transfers to Client upon completion of Payment Plans

**1.2 Monthly Services:** Client agrees to pay Company for security services itemized below:

| Type of Service | Monthly Service Charge | Type of Service | Tax Service Charge |
|---|---|---|---|
| ■ UL Fire Alarm Monitoring Service | $ 65.00 | ■Tax | $ 3.85 |

\The Service of $___176.55__ is payable in advance □Monthly, □Monthly, ■Quarterly, □Semi-Annually, or □Annually to
SECURITY & FIRE SYSTEMS, INC., AND/OR ITS ASSIGNS Address 13016 S.W. 128ᵗʰ Street > Miami, Florida on the first day of the month following the
estimated date of commencement of service which is _____, 20___.

**2. TERM OF THIS AGREEMENT:**
2.1 The primary term of this Agreement shall be for a period of _____3 (years)_____ years from the dates of first billing. Note Auto Renewal clause
on reverse side Section 18. This Agreement is non-cancelable.

**3. SERVICE:**
3.1 Calls for Service or Sales assistance should be directed to SECURITY & FIRE SYSTEMS, INC.
Address __MIAMI-DADE, FL.__ Phone Nº (305) 971-2944

**4. ADDITIONAL TERMS:**
4.1 This Agreement consists of the terms contained on this page, the reverse side of this document and on any attachments indicated as follows:
□Schedule A,        □Schedule C,        ■Schedule B        □ Schedule G,        □ Other _UCC-1 Filing of UCC-1 Fin. Statement_
■Schedule B,        □Schedule D,        □Schedule F,        □ Schedule H,        □ Other _____

**5. CLIENT SELECTED SERVICES:**
5.1 Client acknowledges that where burglar and/or fire alarm or access control equipment is provided, the system is designed to detect entry only through those accesses and/or areas actually covered by the equipment listed on Schedule A of this Agreement, that such equipment performs only those functions, and the system is activated only under the circumstances explained to the Client. Further, Client acknowledges that (a) Company has explained the full range of protection, equipment and services available to Client; (b) Client desires and has contracted for only the equipment and services itemized on this Agreement; and (c) additional protection over and above that provided herein is available and may be obtained from Company at an additional cost to the Client.
5.2 CLIENT UNDERSTANDS AND AGREES THAT IF COMPANY SHOULD BE FOUND LIABLE FOR LOSS OR DAMAGE BECAUSE OF THE FAILURE OF THE SYSTEM TO PERFORM PROPERLY OR THE FAILURE OF COMPANY TO PERFORM ANY OF ITS OBLIGATIONS OR TO PROVIDE ANY OF THE SERVICES CONTAINED FORTH ON ALL SCHEDULES ATTACHED HERETO, INCLUDING, BUT NOT LIMITED TO INSTALLATION, SERVICE, MONITORING, OR THE FAILURE OF ANY EQUIPMENT INSTALLED BY, OR SERVICE PERFORMED BY COMPANY IN ANY RESPECT WHATSOEVER, COMPANY'S LIABILITY SHALL NOT EXCEED A SUM EQUAL TO THE ANNUAL SERVICE CHARGE PAYMENT CONTRACTED FOR HEREIN OR TWO HUNDRED AND FIFTY DOLLARS ($250.00), WHICHEVER IS THE LESSER AND THIS LIABILITY SHALL BE EXCLUSIVE; AND THAT THE PROVISIONS OF THIS SECTION SHALL APPLY IF LOSS OR DAMAGE, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY, TO PERSON OR PROPERTY, FROM PERFORMANCE OR NON-PERFORMANCE OF THE OBLIGATIONS IMPOSED BY THIS AGREEMENT, OR FROM NEGLIGENCE, ACTIVE OR OTHER OTHERWISE, OF COMPANY, ITS AGENTS, ASSIGNS OR EMPLOYEES.
5.3 CLIENT FURTHER ACKNOWLEDGES THAT CLIENT HAS READ AND UNDERSTANDS ALL OF THIS AGREEMENT INCLUDING THE TERMS AND CONDITIONS ON THIS SIDE AND THE REVERSE SIDE OF THIS DOCUMENT, PARTICULARLY PARAGRAPH 5 REGARDING COMPANY'S LIMITATIONS OF LIABILITY AND AGREES TO THE AMOUNTS SET FORTH THEREIN AS WELL AS THOSE TERMS AND CONDITIONS ON ANY SCHEDULE ATTACHED HERETO AND ACKNOWLEDGES RECEIPT OF A TRUE COPY OF ALL APPLICABLE SCHEDULES.
IN WITNESS WHEREOF, and intending to be bound hereby, the parties hereto have executed this Agreement this __14__ day of _April__, 20 15

COMPANY SECURITY & FIRE SYSTEMS, INC.                    CLIENT
                              And/or its assigns            By: _____ President
Security Consultant _____                         (NOTE SECTION 2.1 MUST BE COMPLETED)
                                                           By: _____ Secretary
Manager _____                                     (NOTE SECTION 2.1 MUST BE COMPLETED)

I hereby authorize Security & Fire Systems Inc. to fix my signature to work orders and this agreement necessary for work being performed on my behalf by Security & Fire Systems Inc. electronically. Said electronic signature shall constitute my authorization for Security & Fire System Inc. to do the work ordered and will obligate me to pay for said work when invoiced.
This Agreement shall not be binding upon Company unless approved in writing by an authorized Manager for Company. In the event of non-approval, the sole Liability of Company shall be refund to Client the amount that has been paid to Company by Client upon execution of this Agreement.
NOTE: This Agreement is not valid unless signed by both parties
                                                           By: _____ Treasurer
ALARM LICENSE # _____                             CONTRACTOR'S LICENSE # EC-13005550

                        } OF 4

                                                           Water Mark on Contract is proof this was original copy


Plaintiff's Exhibit
B

TERMS AND CONDITIONS

1  Increase in Service Charges
    1.1 Company shall have the right annually too increase the Service Charges provided for herein by the same percentage as the 12 month increase in the "Consumer Price Index" (all cities, all items) as published by the U.S. Department of Labor by giving Client thirty (30) days written notice in advance of the effective date of such increase Company shall have the right to increase the Service Charges by an amount greater than the CPI provided that Client approves such an increase. Written notice of an increase greater than the CPI shall be given sixty (60) days in advance of the effective date of such increase, and Clients failure to deny the increase within thirty (30) days of notification shall constitute Clients approval to such increase.
    1.2 Charges for time and materials maintenance services are based upon Company service rates in effect at the time of the service and are subject to change without notice.

2  Increases in Taxes or Other Fees
    2.1 Clients acknowledge that all charges for services set forth herein are based upon existing federal, state and local taxes and utility charges, including telephone company line charges, if any  Company shall have the right, at any time, to increase the monthly charges provided herein to reflect any additional taxes, fees or charges which hereafter may be imposed on Company by any utility or governmental agency relating to the service(s) provided under the terms of this Agreement and Client agrees to pay the same

3  Clients Duties As-to Use of System
    3.1 The Client shall carefully and properly test and set the system immediately prior to the securing of the premises and carefully test the System in a manner prescribed by Company during the term of this Agreement  If any defect in operation of the System develops, or in the event of power failure, interruption of telephone service, or other interruption at Clients premises. Client shall notify Company immediately. If space/interior protection (i.e., ultrasonic, microwave, infrared, etc.) is a part of the System, Client shall walk test the System in the manner recommended by Company
        3.1  When any device or protection is used, including, but not limited to, space protection, which may be affected by turbulence of air, occupied airspace change or other disturbing conditions, Client shall turn off or remove all things, animate or inanimate, including but not limited to forced air heaters, air conditioners, horns, bells, animals and any other sources of air turbulence or movement which may interfere with the effectiveness of the System during closed periods while the alarm system is on  Client shall notify Company of any rearranging or other changes to the protected premises that may affect the operation of the System.
        3.2  Client shall cooperate with Company in the installation, operation and maintenance of the System and shall follow all instructions and procedures Company may prescribe for the operation of the System, the rendering of services and the provision of security for the premises

4  Authorized Personnel
    4.1 Client agrees to furnish forthwith a list of the names, addresses and telephone numbers of all persons authorized to enter or remain on Client's premises and/or that should be notified in the event of an alarm  Client shall also furnish a written opening, closing and holiday schedule, if applicable to the services provided herein. Client agrees to provide all changes, revisions and modifications to the above Company in writing in a timely manner

5  Third Party Indemnification
    5.1 When the Client in the ordinary course of business has custody of the property of others, or the alarm system extends to protect property of others Client agrees to and shall indemnify, defend and hold harmless Company, its employees and agents for and against all claims brought by parties other than the parties to this Agreement. This provision shall apply to all claims regardless cause including Company's performance or failure to perform and including defects in products, design, installation, maintenance, operation or non-operation of the System whether based upon negligence, active or passive, warranty or strict or product liability on the part of Company, its employees or agents, but this provision shall not apply to claims for loss or damage solely and directly caused by an employee of Company while on Clients premises

6  Client's Purchase Order
    6.1 It is understood and agreed by and between the parties hereto that if there is any conflict between this Agreement and Client's Purchase Order this Agreement shall govern, whether such Purchase Order is prior or subsequent to this Agreement. SFS has the right of first refusal on new and repair systems.

7  Assignment by Client
    7.1 Client acknowledges that the sale or transfer of Client's premises shall not relieve Client of duties and obligations under this Agreement unless Company agrees to the transfer of this Agreement.

8  Assignees and / or Subcontractors of Company
    8.1 Company shall have the right to assign this Agreement in whole or in part to any other person, firm or corporation and shall have the further right to subcontract any surveillance, monitoring, maintenance, patrol, emergency response, or other services it may perform. Client acknowledges that this Agreement, and particularly those paragraphs relating to Company's maximum liability, and third party indemnification, shall inure to the benefit of and are applicable to any assignees and/or subcontractors of Company, and that they bind Client with respect to said assignees and/or subcontractors with the same force and effect as they bind Client to Company

9  Additional Services
    9.1 Client agrees that Client may subscribe for or purchase additional services equipment or security protection from Company at agreed prices by written purchase order or contract and that any such additional services, equipment or protections shall, except for the price to be governed exclusively by this Agreement
    9.2 The Client agrees that unless authorized by Company, any alterations, removal or tampering with the equipment or the attaching of any device, contrivance or apparatus to the equipment or any part thereof shall operate to void any warranties provided herein.
    9.3 If any agency or bureau having jurisdiction, or Client by his or its own act shall require or make necessary any changes in the equipment originally installed Client agrees, on demand, to pay for the reasonable cost of such changes.

10  Default / Termination
    10.1 In the event (I) Client fails to pay any amount due for the System, (II) Client fails to comply with any of the terms and conditions hereof, (III) Client makes an assignment for the benefit of creditors, (IV) an order for relief is entered against Client under any chapter of the National Bankruptcy Code as amended, (V) a receiver or trustee is appointed for all or substantially all of the assets of Client, Company may pursue any one or more of the following remedies, which are cumulative and non-exclusive
        a)   Terminate all services subscribed for hereunder by giving five (5) days written notice to Client and recover all amounts then due to Company.
        b)   Take possession of all Company owned equipment.
        c)   Recover from Client all amounts due hereunder.
        d)   Pursue any other remedy at law now or hereafter existing.

11  Delays or Interruptions
    11.1 Company assumes no liability for delay in the installation of the System for interruptions of Services, or damage done to any equipment due to strikes, riots, floods, storms, earthquakes, fire, power failures, insurrection, interruption or unavailability of telephone or cable service, act of God, or for any other cause beyond the control of Company, and will not be required to provide installation for services, or repairs, Client while Interruption of services due to any such cause may continue.
    11.2 Company assumes no liability for delay of installation or service due to non-cooperation of the Client or of others to which Company's equipment is attached. If Client is unable to is to be located or for delays or interruptions of installation or service on any device or devices of the Client or of others to which Company's equipment is attached, Company shall pay any additional labor or equipment costs incurred have premises available for installation of equipment within ninety (90) days of date Company is ready to begin installation, Client shall pay any additional labor or equipment costs incurred by Company due to price increases occurring after the ninety (90) days period has expired  Such additional costs shall be limited to actual increases in prices and shall be payable upon demand.

12  Insurance
    12.1 Company acknowledges that it carries Workers Compensation and public liability insurance applicable to the work performed under this Agreement

13  Telephone Service
    13.1 Client agrees to furnish any necessary telephone service or telephone lines at Client's own expense  Any and all telephone company charges shall be billed to Clients telephone bill, unless specified otherwise in Paragraph 2 on the front side of this Agreement.

14  Electrical Current
    14.1 The Client agrees to furnish any necessary electrical service and current through the Client's meter and at the Client's sole expense.
    14.2 Title Clause, Paragraph titles used in this Agreement are for reference only and are not to be construed as governing the construction of the specific provisions in this Agreement.

15  Payments, Delinquencies
    Payment shall be due upon the receipt of invoices by Client unless otherwise specified on the front hereof. Interest shall accrue on all amounts more than thirty (30) days past due at the Company, Client maximum allowable rate  All payments shall be due and payable at Company's office set forth on the front hereof. If an attorney is employed to collect any amount due from Company, Client agrees to pay Company reasonable attorneys fees and costs incurred when permitted by applicable law  If Services are discontinued because of Client's past due balance, and if Client desires to have the monitoring service reconnected, Client agrees to pay in advance to Company a reconnect charge to be fixed by Company at a reasonable amount

16  Entire Agreement, Modification, Waiver
    16.1 This writing is intended by the parties as a final expression of their agreement and as a complete and exclusive statement of the terms thereof. This Agreement supersedes all prior representations, understandings or agreements of the parties, written or oral, and shall constitute the sole terms and conditions of sale for all equipment and services. This Agreement can be modified only in writing, signed by the parties or their duly authorized agent. No waiver or a breach of any term or condition of this Agreement shall be construed to be a waiver of any succeeding breach.

17  Acceleration Clause
    17.1 The failure to pay the amounts under paragraphs 1.1.2, 1.1.3,1.1.4,) 2,1.3, and 2 shall result in a default under this contract and all present and future payments due under said paragraphs shall immediately become due and payable. All sums due and payable shall bear interest at the maximum rate allowed by law from date of default until paid

18  Renewal Clause Unless otherwise provided under the terms of the attached schedule, this Agreement shall automatically renew for a period of 3 years at the end of such primary term or any renewal term thereafter unless Client shall have given written notice to Company sixty (60) days before the end of the primary renewal term. Notice must be sent via certified return receipt mail.

19  Late Fee  If payment is not received by the 10th of the month the Company reserves the right to charge a late fee, which will be 1.5 per month , 18% a year.

                                                                                                    INITIALS ___

2 OF 4



# SCHEDULE E MAGNOLIA LANE BLDG 7427
## FIRE SERVICES AGREEMENT WITH COMPANY
### INSPECTIONS AND CERTIFICATIONS

| 1.1  AS PART OF FIRE SERVICE AGREEMENT 2.2.1 | Per-Call | Monthly | Quarterly | Semi-Annually | Annually |
|---|---|---|---|---|---|
| A) Annual Fire Alarm Inspection / Certification – (Tagging on Fire Alarm System & Cert.) | | | | | $350.00 |
| B) Annual UL Fire Alarm Inspection / Certification - (Tagging on Fire Alarm System & Cert.) | | | | | $200.00 |
| C) Annual UL Fire Certificate | | | | | $200.00 |
| D) Annual Emergency / Exit Inspection (Tagging on Emergency/Exit Light Systems & Cert. Tag | | | | | $42.60 |
| E) Annual Single Station Smoke Detector Certification | | | | | $250.00 |

The Service Charges of $ __1042.60 (tax not included)__ is payable $ __1042.60 (tax not included)__ Annually

| 1.4  RUNNER SERVICE | | | | | |
|---|---|---|---|---|---|
| A) Runner Service Normal Business Hours (Normal Business Hrs. are 7 a.m. – 6 p.m. M-F) | $ 170.00 (Per - Call COVERS FIRST 2 HRS MIN SERVICE CALL CHARGE ) | $ | $ | $ | $ |
| B) Runner Service Non-Normal Business Hours (Non-Normal Business Hrs. are 6 p.m. – 7 a.m. M-F & Sat. – Sun) | $ 225.00 (Per - Call COVERS FIRST 2 HRS MIN SERVICE CALL CHARGE ) | $ | $ | $ | $ |

**1.5  AGREEMENT**

1.51 The subscriber has contracted with the Service Company for the Fire Alarm System and / or service at premises indicated on Service Agreement, (hereinafter called the Premises)

1.52 The subscriber has contracted with the Service Company to enter into agreement with Central Station Service as per NFPA72 and local Fire Department to comply with Runner Service and Central Station Service and the subscriber agrees to pay fees for such as per price Listed on Schedule E

1.53 The Subscriber agrees with Company maintenance, testing and inspection is included as per NFPA72, that system will be maintained and fully functional at all times and deficiencies repaired within 4 hour as per Co. Code Sect. 14-66 (a) and 14-66(5), If specific part is needed to be able to repair deficiencies and specific part needs to be ordered, Company will advise AHJ by means of letter.

1.54 The Subscriber agrees with Company that runner shall be provided with keys or other means to access alarm as per Co. Code Sect 14-66(4)(a), in order to have 2 hour response after notification of alarm signal or supervisory signal and 4 hour response after notification of trouble signal. If monitoring is required Customer agrees that runner will be dispatched without prior approval by Customer.

**2. INSPECTIONS CERTIFICATIONS SERVICE**

2.1 The Company and the Subscriber have entered into a Service Agreement wherein and whereby the Company will provide additional        Services for the Subscriber, such services to consist of those set and shall become part of 2.2.21 Terms of this Agreement. This agreement is non-cancelable.

       Basic Fire Alarm Services Include:
       a) Direct call response by experienced operators, to an emergency condition until proper authorities are notified. 1 2 Fire Services.

       b) Direct call response until a station designated by subscriber is notified.
       c) Direct dispatch of Service Technician billed on hourly base in accordance to existing price list on schedule.
       e) Subscriber agrees to pay Company for Fire Alarm Services itemized as part of 2.2.21 Terms of this Agreement and shall be govern by Fire Service Agreement

2.2 The Subscriber and the Company agree that the Company's sole and only obligation under Schedule shall be to service and inspection reports. Report any deficiencies to Property Management or authority having jurisdiction AHJ as outlined in NFPA 72 and 101

       a) Any deficiencies for repairs or modifications of system which customer rejects does not constitute waiver of this agreement. The sole liability of company under Schedule C is to report malfunction, non-operational Life Safety Protective Devices.

       b) The company sole responsibility shall be to summit deficiencies. Any labor for repairs and parts are to be billed on a separate itemized bill, on an hourly basis. And at a current list price for parts as per price list on schedule.

       c) The Subscriber shall immediately report to Company any claimed inadequacy in or failure of the Fire Alarm system.

2.3 This Inspection, Certification shall continue for as long as the Company contracts with the Subscriber as per 2.2.1. As per Security Service Agreement.

2.4 This Service Agreement may also be suspended at the Company's option, should the Fire Alarm System Equipment or the premises become so substantially damaged that further service is unpracticable or refusal to comply with NFPA 101-72 UL.
       a) The Company assumes no liability for delay in installation of the system, or interruption of service due to strike, riots, floods, fires, acts of God, war, or any causes beyond the control of the Company, including interruption in telephone service. The Company will not be required to supply service to the Subscriber while interruption of service due to any such cause shall continue.

**3. LIABILITY**

The Company shall not be liable for any loss or damage caused by defects or deficiencies in the Fire Alarm System Equipment nor shall the Company insure any liability for any delay in response time or non-response of the Fire Department or other authorities, institutions or individuals notified by the Company.

       3.1 It is understood and agreed by Subscriber that the Company is not an Insurer and that insurance, if any, covering personal injury and property loss or damage on Subscriber's premises shall be obtained by the Subscriber; that the Company is being paid to monitor the Fire Alarm System designed to reduce certain risks of loss and that the amount being charged by the Company are not sufficient to guarantee that no loss will occur

       3.2 This Inspection, Certification, Service may only be altered or modified by an agreement in writing, signed by both parties.

              Water Mark on Document is proof this is an original copy.

NAME Gloria Utrera  INITIALS G. U.    DATE 4-14-2015
3 OF 4

NAME  MAGNOLIA LANE BLDG #7427                          DATE  04-14-2015

## SCHEDULE B
### LIST OF EQUIPMENT TO BE INSTALLED / SERVICES TO BE PROVIDED

| QTY | EQUIPMENT / LOCATION | QTY | EQUIPMENT / LOCATION |
|---|---|---|---|
| 1 | SIELNT KNIGHT 5208 FIRE ALARM PANEL | | PERMIT WITH MIAMI DADE COUNTY |
| 1 | SILENT KNIGHT 5235 ROMOTE ANNUNCIATOR | | FIRE ALARM PLANS DESIGN |
| 1 | SYSTEM SENSOR SMOKE DETECTOR 2WB | | PLANS ENGINEERING |
| 4 | PULL STATION WP FIRELITE | | BLUE PRINTS DESIGN AND LAY OUT OF FIRE ALARM |
| 1 | PRONEMA 4X | | BLUE PRINTS WALK THROUGH WITH FIRE DEP/OR AUTHORITY HAVING JURISDICTION |
| 4 | HORN STROBE 75CDWP | | ELECTRICAL PERMIT WALK THROUGH WITH ELECTRICAL INSPECTOR |
| 16 | HORNES | | ROUGH ELECTRICAL INSPECTION WITH AUTHORITY HAVING JURISDICTION |
| | WIRES,NUTS, FPL,REMODOLING,BOX , OCTO | | FINAL INSPECTION WITH FIRE INSPECTOR / OR AUTHORITY HAVING JURISDICTION |
| | BOX, ELEC BOX, PIPES, CONNECTORS,COUPLINGS | | |
| | STRAPS , FIRE STOP,CALUK, METAL WIREWAYS,COVER, CLIPS,OANS 8XT,PLASTIC BOXES,FITTINGS | | |

## SECURITY SERVICES WITH COMPANY OWNED EQUIPMENT

1  **AUTHORIZATION TO INSTALL:**
1.1  Client warrants that Client has full authority from the owner and/or other person in control of the premises to permit the installation of the system under all conditions set forth herein
1.2  Company is hereby authorized to install the system and to make any preparation such as drilling holes, driving nails, making attachments or doing other things necessary or pertinent to the installation of the system.
1.3  Company shall install the system during normal business hours, or at such other times as may be mutually agreed upon between the parties.

2  **ACCEPTANCE OF INSTALLATION:**
2.1  Any error or omission in the installation of the system must be called to the attention of Company in writing within thirty (30) days after completion of installation. Upon the expiration of said thirty (30) days, the installation shall be deemed totally satisfactory to and accepted by Client.

3  **CLIENT:**
3.3  Client, which represents and warrants that it has the authority to do so, hereby authorizes and empowers Company, its agents or assigns, to install and maintain the aforesaid equipment in said premises and to inspect, test and repair the equipment when necessary. Client further authorizes Company to make any changes in or alterations to the equipment made necessary by any changes in the Client's premises, property or equipment after the original installation has been completed and Client agrees to pay the reasonable cost thereof upon demand.

4  **BUSINESS HOURS:**
4.1  It is mutually agreed that the work of installation, repair and Company's periodic inspections and tests of the systems shall usually be performed during normal business hours. Company assumes no responsibility for limited disruption of Client's premises if service to equipment is required during business hours. Company shall make needed repairs to its Equipment within a reasonable time after Company receives notice that the repairs are necessary. When necessary, Company will make repairs at any time, day or night Should repairs be necessitated by Client's action or neglect and require night or weekend work such work shall be billed to Client at Company's then prevailing overtime rate.

5  **REPAIRS:**
5.1  Company shall make all repairs and adjustments as may be necessary for the proper operation and maintenance of the equipment provided that Client shall exercise reasonable care in the handling of the equipment and notifies Company promptly of any condition which may require service by Company. The expense of all ordinary maintenance and repair of said equipment, required because of normal wear and tear or equipment failures shall be borne by Company. The expense of any extraordinary maintenance or repair of said equipment due to alterations of the Client's premises deliberate or negligent damage to such premises or the equipment by Client, employees, guests or invitees, and including but not limited to damage caused by fire, lightning, water or theft, shall be borne by the Client

6  **SYSTEM PROPERTY OF COMPANY:**
6.1  The system, including all materials associated therewith shall at all times remain the property of Company regardless of the manner of attachment to the location. Client hereby agrees to protect the equipment and to indemnify and pay Company the cost of repair or replacement or any loss or damage to the equipment, including but not limited to, loss by fire, vandalism, flood or other damages and destruction.

7  **NO LIENS OR ENCUMBRANCES:**
7.1  Client agrees that it will not place any liens or encumbrances upon any of the equipment covered by this Agreement nor will it knowingly permit or cause such liens or encumbrances to be placed thereon by other persons, and in the event that any such liens or encumbrances are actually placed or permitted to be placed on such equipment then Client at its own cost and expense shall take all legal steps necessary to have such liens or encumbrances removed forthwith or in lieu thereof Client shall at its own cost and expense furnish whatever bond is necessary to obtain the release and complete discharge of such equipment from said liens and encumbrances. Client will not change or remove any insignia or lettering, which is thereafter placed thereon by or at the request of Company

8  **REMOVAL OF EQUIPMENT:**
8.1  Company may remove all devices, instruments, appliances cabinets and other materials associated with the system, upon termination of this Agreement. The removal of such materials shall not be held to constitute a waiver of the right of Company to collect any charges, which have been accrued upon the termination, breach or discontinuance of the service for any cause whatsoever Company shall have and is expressly given the right to enter the premises and remove any and all of its Equipment therefrom. Client agrees to give Company at least ten (10) days notice in writing of Client's intention to vacate the aforementioned premises, and agreement shall be deemed in automatic default for failure to notify Company of such intention However, nothing herein contained shall be deemed a waiver by Company of the Client's obligation to pay the periodic installments and other charges as herein provided for, or in the event of a default, the entire unpaid balance for the entire and unfinished term of this Agreement or any renewal hereof.
8.2  Company shall not be required to remove all of its equipment or wiring and in no event shall Company be required to restore premises to its original (pre-installation) condition or to remove ħbling from windows or doors.

*SECURITY & FIRE SYSTEMS, INC.*
*13016 SW 128 STREET*
*MIAMI FL 33186*
*SERVICING: DADE · BROWARD · MONROE  PALM BEACH  LEE · COLLIER COUNTY*
*OUTSIDE DADE CALL 800.781.7734*
*E-MAIL BURGFIRE@BELLSOUTH .E*
*STATE LICENSE # EC0002137*

4 OF 4                                                          INITIALS E. U

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

MAGNOLIA LANE CONDOMINIUM
ASSOCIATION, INC.

      Debtor,
_____/

Case No.: 19-24437-LMI

Chapter 11

MAGNOLIA LANE CONDOMINIUM
ASSOCIATION, INC

      PLAINTIFF

v.

SECURITY & FIRE SYSTEMS, INC.

----------------------------------------------/

AP Case No.:

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11. U.S.C. 547 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 USC 502

# EXHIBIT-B

Filing # 73369612 E-Filed 06/11/2018 02:04:32 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO. 17-028471 CA01

SECURITY & FIRE SYSTEMS, INC.,

        Plaintiff,

vs.

MAGNOLIA LANE CONDOMINIUM
ASSOCIATION, INC., a Florida
corporation,

        Defendant.

_____/

## MOTION FOR FINAL JUDGMENT AFTER DEFAULT

The Plaintiff, **SECURITY & FIRE SYSTEMS, INC.**, by and through undersigned

counsel, hereby moves this Honorable Court to enter Final Judgment against the Defendant,

**MAGNOLIA LANE CONDOMINIUM ASSOCIATION, INC.**, and states:

1.    This action was filed against the defendant on December 12, 2017, and served on
the defendant on December 21st, 2017.

2.    On April 2nd, 2018, when no response to the Complaint was filed or served, the
plaintiff filed a Motion for Court Default.

3.    A hearing on the motion was held on April 24th, 2018, and, on the same day, the
court entered a default against the defendant.

4.    Counsel for the defendant appeared at the hearing, but withdrew immediately after
the default was entered.

5.    The default was served on counsel for the defendant in open court.

6.    Within two days of the default being entered, the plaintiff received a telephone call from the defendant indicating that it was aware of the default being entered against it.

7.    Although the default was entered on April 24th, 2018, and immediately served on the defendant, the defendant has made no attempt to set it aside.

8.    In addition to the contractual damages, the plaintiff has agreed to pay attorney's fees based on 33% of the non-cost damages.

9.    The defendant owes the plaintiff the sum of $342,029.11, (see Sworn Statement of George Milian, President of Security & Fire Systems, Inc., attached hereto as Exhibit "A" to this Motion).

**WHEREFORE,** the plaintiff moves this Honorable Court to enter a Final Judgment against the defendant in the amount of $342,029.11, with interest to run at the rate of ___ % from the date of the judgment.

Respectfully Submitted,

Steven Mark Greenberg, P.A.
7510 N.W. 79th Avenue, Suite Q3
Tamarac, Florida 33321
Telephone: (954) 830-1002
Facsimile:  (954) 430-9289
E-Mail:    smgpasg@gmail.com

  /s/ Steven M. Greenberg
Florida Bar Number 115046

2

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO. 17-028471 CA01

SECURITY & FIRE SYSTEMS, INC.,

        Plaintiff,

vs.

MAGNOLIA LANE CONDOMINIUM
ASSOCIATION, INC., a Florida
corporation,

        Defendant.

_____/

## SWORN STATEMENT IN SUPPORT OF
## MOTION FOR FINAL JUDGMENT

The Plaintiff, hereby swears to the following:

1.    I am George Milian, the president of Security & Fire Systems, Inc.

2.    I have computed the amount of money the defendant, Magnolia Lane

Condominium Association, Inc. owes to Security and Fire, based on the contracts

between the parties:

| | | |
|---|---|---:|
| a. | Billed invoices | $40,995.00 |
| b. | Contract dated 4/13/2015 | 97,211.64* |
| c. | Contract dated 4/14/2015 | 50,625.58* |
| d. | Attorney's fees (@33%) | 62,314.63 |
| | | $251,146.85 |
| | | |
| e. | 24 months interest @18% per year | 90,412.87 |
| **DAMAGES** | | $341,559.72 |
| f. | Costs | 469.39 |
| **TOTAL WITH COSTS** | | **$342,029.11** |

*Including sales tax

*Exhibit A*

Under penalties of perjury, I hereby swear that I have read the foregoing, and that the facts stated in it are true.

_____
GEORGE MILIAN, President
SECURITY & FIRE SYSTEMS, INC.

Respectfully Submitted,

Steven Mark Greenberg, P.A.
7510 N.W. 79th Avenue, Suite Q3
Tamarac, Florida 33321
Telephone: (954) 830-1002
Facsimile:  (954) 430-9289
E-Mail:    smgpasg@gmail.com

   /s/ Steven M. Greenberg
Florida Bar Number 115046

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

MAGNOLIA LANE CONDOMINIUM
ASSOCIATION, INC.

      Debtor,
_____ /

MAGNOLIA LANE CONDOMINIUM
ASSOCIATION, INC

      PLAINTIFF

v.

SECURITY & FIRE SYSTEMS, INC.

-------------------------------------------------/

Case No.: 19-24437-LMI

Chapter 11

AP Case No.:

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11. U.S.C. 547 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 USC 502

# EXHIBIT-C

CFN: 20180446252 BOOK 31072 PAGE 3745
DATE:07/25/2018 08:30:16 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO. 17-028471 CA01

SECURITY & FIRE SYSTEMS, INC.,

        Plaintiff,

vs.

MAGNOLIA LANE CONDOMINIUM
ASSOCIATION, INC., a Florida
corporation,

        Defendant.
_____/

## FINAL JUDGMENT AFTER DEFAULT

This action was heard after entry of default against defendant Magnolia Lane

Condominium Association, Inc., and

    IT IS ADJUDGED that plaintiff, Security & Fire Systems, Inc., 13016 S.W. 128th Street

recover from defendant, Magnolia Lane Condominium Association, Inc., 6625 Miami Lakes

Drive, Suite 365, Miami Lakes, Florida 33014, the sum of $188,832.22 on principal, $62,314.63

for attorney's fees, with costs in the sum of $469.39, and prejudgment interest in the sum of

$90,412.87 ,making a total of $342,029.11, that shall bear interest at the rate of ____ % a year,

for which let execution issue, forthwith.

                                   JUL 1 0 2018

    ORDERED at Miami-Dade County, Florida, on _____, 2018.

                           CIRCUIT COURT JUDGE
                               ORIGINAL
                         Judge Miguel de la O

Copies furnished to:

Steven M. Greenberg, Esq.
Attorney for Plaintiff
Magnolia Lane Condominium Association, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

MAGNOLIA LANE CONDOMINIUM                 Case No.: 19-24437-LMI
ASSOCIATION, INC.

      Debtor,                                 Chapter 11
_____ /

MAGNOLIA LANE CONDOMINIUM                  AP Case No.:
ASSOCIATION, INC

      PLAINTIFF

v.

SECURITY & FIRE SYSTEMS, INC.

--------------------------------------------------/

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11. U.S.C. 547 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 USC 502

# EXHIBIT-D

**Steven M. Greenberg, P.A.**
Attorney at Law

7510 N.W. 79 Avenue, Suite Q3
Tamarac, Florida 33321
Telephone: (954) 830-1002
Facsimile: (954) 586-4132
E-mail: smgpasg@gmail.com

October 14, 2019

Att:    John Paul Arcia, Esq.
John Paul Arcia, P.A.
175 S.W. 7th Street, Suite 2000
Miami Florida 33130

**RE:**    Security & Fire Systems, Inc.
v. Magnolia Lane Condominium Association, Inc.

Dear Mr. Arcia:

Thank you for your e-mail of this date.  Pursuant to your request, enclosed please find an analysis of the status of the Magnolia Lane Account:

1.    **DATE OF FINAL JUDGMENT:**          July 10, 2018

2.    **AMOUNT OF FINAL JUDGMENT:**          $342,029.11

3.    **INTEREST RATE (POST-JUDGMENT):**          5.97%

4.    **SETTLEMENT AGREEMENT:**          September 29, 2018

5.    **PAYMENTS BY MAGNOLIA**

| | | | |
|---|---|---|---|
| a. | September 21, 2018 | $ | 10,000.00 |
| b. | October 10, 2018 | | 10,000,00 |
| c. | November 16, 2018 | | 10,000.00 |
| d. | December 10, 2018 | | 10,000.00 |
| e. | January 10, 2019 | | 10,000.00 |
| f. | February 9, 2019 | | 10,000.00 |
| g. | March 11, 2019 | | 10,000.00 |
| h. | April 12, 2019 | | 11,000.00 |
| i. | April 19, 2019 | | 9,000.00 |
| j. | May 8, 2019 | | 18,000.00 |

|     |                              |     |            |
| --- | ---------------------------- | --- | ---------- |
| k.  | July 5, 2019                 |     | 10,000.00  |
| l.  | September 17, 2019           |     | 10,209.53  |
| m.  | October 9, 2019              |     | 8,838.85   |

| 6.  | **TOTAL AMOUNT PAID:**       | $   | 137,048.38  |
| --- | ---------------------------- | --- | ----------- |
| 7.  | **BALANCE, WITH INTEREST:**  | $   | 228,423.95  |
| 8.  | **INSPECTIONS**              | $   | 4,000.00    |
| 9.  | **POST-JUDGMENT COSTS:**     | $   | 2,815.00    |
| 10. | **ATTORNEY'S FEES**[1]       | $   | 25,000.00   |
| 11. | **OUTSTANDING BALANCE:**     | $   | **260.238.95** |

Your e-mail evidences your belief that we are not entitled to the post-judgment interest ordered by the Court, and the costs and fees associated with our collection attempts. I am constrained to point out that both the pre-judgment interest, and the post-judgment interest, fees, and costs, were engendered solely as a result of your client's refusal to deal with our firm in resolving this matter, or in making a good faith effort to pay the debt. After the judgment was entered, instead of moving immediately to collection, we entered into an agreement in good faith to allow the debt to be paid off over several months, with payments that the Board and the property manager approved.

When it became obvious that your client was attempting to thwart collection, and that it intended to violate the agreement in multiple ways. I was retained to collect the debt. I agreed to a flat fee, based on the amount of work deemed necessary to collect, and a reasonable rate. Needless to say, the amount of work your client force me to expend more than justified the amount I agreed to with my client.

It appears from your letter that the coupons necessary to collect the special assessment have not even been sent out by the Association, despite the many, many promises to do so. The special assessment was supposed to be levied in January of 2019, over ten (10) months ago. Your client no longer is in any position to bargain for better terms, having violated agreement after agreement.

I have been instructed by my client to immediately seek the appointment of a Receiver for the sole purpose of collecting our debt. Please note that, in the Settlement Agreement signed by the parties, Magnolia Lane has no standing to contest the appointment. Nor does it have standing to withhold monies from the special assessment as they come in. We are entitled to every dime

---

[1] By Contract

2

collected, as soon as it is collected.
Please inform your client of our position.

Very truly yours,


Steven M. Greenberg

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

MAGNOLIA LANE CONDOMINIUM            Case No.: 19-24437-LMI
ASSOCIATION, INC.

     Debtor,                              Chapter 11
_____/

MAGNOLIA LANE CONDOMINIUM            AP Case No.:
ASSOCIATION, INC

    PLAINTIFF

v.

SECURITY & FIRE SYSTEMS, INC.

-----------------------------------------------/

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11. U.S.C. 547 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 USC 502

# EXHIBIT-E

# JOHN PAUL ARCIA, PA.

Latitude One Office Building | 175 S.W. 7th Street, Suite 2000 | Miami, Florida 33174
T  786.429.0410 | F  786.429.0411| parcia@arcialaw.com

November 29, 2019

Security & Fire Systems, Inc.                             Copy To:   Steven Mark Greenberg, PA
4577 North Nob Hill Road, Suite 205                              7510 NW 79 Ave, Suite Q3
Sunrise, Florida 33351                                          Tamarac, Florida 33321
Attention: Mr. George Milian (Registered Agent)          Attn: Mr. Steven Greenberg, Esq.
Sent Email to: milian@burgfire.com                          Email to:  smgpasg@gmail.com
Certified Mail 7019 0700 0000 4213 0604          Certified Mail 7019 0700 0000 4213 0611


CC.  Michael Frank, Esq.
mfrank@bkclawmiami.com
Certified Mail: 7019 0700 0000 4213 0642

REFERENCE:     **Debtor in Possession, Magnolia Lane Condominium Association, Inc.**
               **Demand for Return of Preference Payment**
               **Creditor: Security & Fire Systems, Inc.**
               **Amount of Preference Payment:  $ 21,134.98**

Dear Mr. Milian,

This Law Firm serves as Bankruptcy Counsel to Debtor in Possession, Magnolia Lane
Condominium Association, Inc. (hereinafter, "Association"). *On October 28, 2019* (hereinafter,
"Petition Date"), the Association filed a Voluntary Chapter 11 Bankruptcy Petition un the United
States Bankruptcy Court, Southern District of Florida.  The Case Style and Case Number is:

**IN RE:  Magnolia Lane Condominium Association, Inc.**
**Case Number is: 2019-24437-LMI**


Under Section 547 of the Bankruptcy Code, a Debtor in Possession may make a claim to recover
payments made by the Debtor in Possession to non-insiders within ninety (90) days of a bankruptcy
filing.  A Debtor is deemed insolvent ninety days prior to the filing of any Bankruptcy.  Section
547 allows a Debtor to recover payments made by the debtor while the Debtor was insolvent.
Payments made to Creditors during the ninety-day period prior to the Bankruptcy are referred to
as Preference Payments.

John Paul Arcia, PA-File 577.26                                                1

**Preference Payments.** You have received Preference Payments in the amount of <u>$ 21,134.98.</u> This amount consists of the Following payments which were made to you within 90 days of the Petition Date:

- **09/17/2019**     $ 10,209.53
- **09/25/2019**     $  8,838.85
- **10/28/2019**     $  2,086.60

**Demand for Payment.** <u>Demand is made that you pay to the Association the sum of $ 21,134.98. within Ten (10) days from the receipt of this letter.</u> This amount represents the payments made to you by the Association/DIP within the 90 days prior to the Petition Date. Should you fail to comply with the Demand made in this letter, the Association shall file an Adversary Proceeding against you in the United States Bankruptcy Court for the Southern District of Florida to recover the Preference Payment.

Thank you for your immediate attention to this matter. Should you have any questions or concerns, please do not hesitate to contact me.

**PLEASE GOVERN YOURSELF ACCORDINGLY**

Sincerely,

John Paul Arcia
For the Firm

cc:
Security & Fire Systems, Inc.
13210 SW 132nd Avenue, Suite 8
Miami, FL 33186
Certified Mail: 7019 0700 0000 4213 0628

George Milan
4577 North Nob Hill Road, Suite 205
Sunrise, FL 33351
Certified Mail: 7019 0700 0000 4213 0635

George Milan
7451 Wiles RD., Suite 101
Coral Springs, FL 33067
Certified Mail: 7019 0700 0000 4213 0659A